TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00385-CR






Willie James Winn, III, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 99R-029, HONORABLE DAN R. BECK, JUDGE PRESIDING







A jury found appellant Willie James Winn, III, guilty of possessing more than 400
grams of cocaine. See Tex. Health & Safety Code Ann. § 481.115(a), (f) (West Supp. 2000). 
The district court assessed punishment at imprisonment for thirty years. Winn challenges the legal
and factual sufficiency of the evidence to sustain the jury's verdict. We will affirm.

On February 3, 1999, Fayette County Deputy Sheriff Jeffrey Head received a report
that a white Suburban had driven away from a fast-food restaurant/gas station in LaGrange without
paying for gasoline. Shortly thereafter, Head saw and stopped a Suburban matching the
description of the suspect vehicle. The Suburban was registered to and driven by Quincy Lee
Wray.(1) Winn was sitting in the front passenger seat. Also in the vehicle were three women and
an infant. Wray told Head that he had mistakenly believed that one of the women had paid for the
gas, and agreed to return to the station.

Head spoke to Winn at the gas station while Wray went inside to pay. Winn told
the officer that he and his companions were on their way back to Austin, but that he did not know
where they had been. Asked by defense counsel if this was Winn's way of saying that he did not
understand the officer's question, Head testified that he believed that Winn understood the question
but was not being candid in his answer.

After Wray paid for the gasoline and that matter was considered closed, Head asked
Wray for permission to search the Suburban. Wray refused to consent to the search. Head then
told Wray that he and the others were free to leave, but that the Suburban was to be detained
pending the arrival of a drug-sniffing dog. Wray, Winn, and their companions sat in the Suburban 
and smoked while waiting for the dog. Head noticed "a lot of movement inside the vehicle" during
this time.

When the dog arrived, Winn and his companions initially refused to leave the
Suburban. They finally relented, and the dog was walked around the outside of the vehicle. The
dog alerted by the front door, indicating that he smelled narcotics. Head left to get a search
warrant while another officer sat with the suspects inside the restaurant. When Head returned with
the warrant, this officer heard Wray tell one of the women "he was fixing to go to jail."

Head testified that Wray activated the Suburban's alarm system during his absence
and refused to disarm it after being served with the search warrant. Officers used tools to enter
the vehicle. The drug dog was placed inside and immediately alerted on the center console. Head
opened the console and removed "an area that had cassette tapes and everything else." At the
bottom of the console, Head found "a large brown bundle, a small plastic bag containing
marihuana, and also a marihuana cigar as well as a cell phone, a box of ammunition and I believe
a box of cigars." The bundle was shown to contain over 500 grams of cocaine in a plastic zip bag. 
The bag had been wrapped in sheets of fabric softener, then sealed in plastic, and finally covered
with brown masking tape. A sack containing brown masking tape, plastic wrap, fabric softeners,
and scissors was found inside the Suburban. Other items seized during the search included cell
phones, a pager, and a stun gun. Wray was carrying $979 in cash when arrested; Winn had $220.

Winn testified that he accepted Wray's invitation to go with him and the women to
Astroworld and the beach. They left Austin at midnight, stopping at a motel somewhere in the
Houston area around 4:00 a.m. Winn said he was awakened at 2:00 p.m. by Wray pounding on
his door. Wray told Winn he was angry because the women had taken the Suburban, ostensibly
to go to the grocery store, but had been gone several hours. When the women returned to the
motel, Wray announced that the trip was off and that they were returning to Austin. Winn
testified that the only stop they made after leaving the motel was to eat and buy gas in LaGrange. 
Winn acknowledged having cigarette papers in his pocket when arrested and admitted that he
occasionally smoked marihuana, but he denied having any knowledge of the marihuana and
cocaine that was found in the Suburban.

Wray also testified, and his description of the trip was similar to Winn's. Wray
claimed he did not know that there was contraband in his vehicle. He said that the women had
taken the Suburban for five hours while in Houston, and suggested that the drugs had been
purchased by them during that time.

The test for the legal sufficiency of the evidence to support a criminal conviction
is whether, after viewing all the evidence in the light most favorable to the verdict, any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307, 324 (1979); Griffin v. State, 614 S.W.2d 155, 158-59 (Tex.
Crim. App. 1981). In order to prove unlawful possession of a controlled substance, the State must
prove that the accused exercised care, control, and management of the substance, and that the
accused knew the substance was contraband. See Martin v. State, 753 S.W.2d 384, 387 (Tex.
Crim. App. 1987); Hackleman v. State, 919 S.W.2d 440, 444 (Tex. App.--Austin 1996, pet.
ref'd, untimely filed). When the accused is not in exclusive control of the place the contraband
is found, the State must prove independent facts and circumstances affirmatively linking the
accused to the contraband. See Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). 
"Affirmative links" is a shorthand expression of what the State must prove to establish that the
accused knowingly or intentionally possessed the contraband. See Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995). The required affirmative links can be proven by direct or
circumstantial evidence, but the links do not need to be so strong that they exclude every other
outstanding reasonable hypothesis. See id. at 747-48. All that is required is that the accused's
connection with the drug be more than fortuitous. See id. at 747.

A defendant's mere presence at a place where contraband is being used or possessed
by others does not link him to the contraband. See Martin, 753 S.W.2d at 387. While many
factors have been identified by the courts as being relevant in determining whether a defendant is
affirmatively linked to contraband, the number of factors present in any particular case is less
important that the logical force the factors have, alone or in combination, in establishing the
elements of the offense. See Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991,
pet. ref'd).

Winn did not own and was not driving the Suburban. Although he was sitting in
close proximity to the contraband, the drugs were not in plain view but were hidden at the bottom
of the console. Winn had no drugs on his person, there was no evidence that he or his companions
were intoxicated, and he made no statements linking him to the contraband. On the other hand,
Winn's behavior following the stop was suspicious in several respects. He claimed to have no idea
where he and his traveling companions had been. While waiting for the drug dog to arrive, Winn
and the other occupants of the Suburban remained in the vehicle, moving about and smoking with
the windows closed, from which an inference could be drawn that they were attempting to hide
the drugs and disguise their odor. And after the dog arrived, they initially refused to exit the
vehicle. Also suggesting a link between Winn and the contraband was his possession of rolling
papers which he admitted he used to smoke marihuana. The material used to wrap the cocaine,
including sheets of fabric softener, were found in the Suburban. Finally, Winn and Wray testified
that five adults and an infant had gone to Houston to visit an amusement park and the beach, but
the police found no luggage in the Suburban.

Viewing the evidence in the light most favorable to the verdict, we conclude that
Winn's connection to the cocaine was shown to be more than merely fortuitous. That is, a rational
trier of fact could find beyond a reasonable doubt that Winn exercised care, custody, or control
over the cocaine knowing that it was contraband. Point of error one is overruled.

In a factual sufficiency review, the evidence is not viewed in the light most
favorable to the verdict. Instead, all the evidence is considered equally, including the testimony
of defense witnesses and the existence of alternative hypotheses. See Orona v. State, 836 S.W.2d
319, 321 (Tex. App.--Austin 1992, no pet.). A factual sufficiency review asks whether a neutral
review of all the evidence, both for and against the finding of guilt, demonstrates that the proof
of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine
confidence in the jury's determination. See Johnson v. State, No. 1915-98, slip op. at 18 (Tex.
Crim. App. Feb. 9, 2000). We must maintain appropriate deference to the jury's verdict by
finding error only when the record clearly indicates that the verdict is wrong and manifestly
unjust. See id., slip op. at 13; Reina v. State, 940 S.W.2d 770, 773 (Tex. App.--Austin 1997,
pet. ref'd).

The jury is the exclusive judge of the credibility of the witnesses and the weight to
be given their testimony, and may accept or reject all or any part of the evidence. See Bonham
v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); Castellano v. State, 810 S.W.2d 800, 807
(Tex. App.--Austin 1991, no pet.); Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). We are
not free to reweigh the evidence and set aside a verdict merely because we feel that a different
result is more reasonable. See Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996);
Reina, 940 S.W.2d at 773. Considering all the evidence before us, and giving due deference to
the jury's verdict, we conclude that the verdict is not manifestly unjust. Point of error two is
overruled.

The district court's judgment erroneously states that Winn waived trial by jury and
pleaded guilty. The judgment is modified to reflect that Winn was convicted by a jury following
a plea of not guilty. As modified, the judgment of conviction is affirmed.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Modified and, as Modified, Affirmed

Filed: September 21, 2000

Do Not Publish


1. Codefendant Wray's appeal is before us in cause number 03-99-00384-CR.


asonable hypothesis. See id. at 747-48. All that is required is that the accused's
connection with the drug be more than fortuitous. See id. at 747.

A defendant's mere presence at a place where contraband is being used or possessed
by others does not link him to the contraband. See Martin, 753 S.W.2d at 387. While many
factors have been identified by the courts as being relevant in determining whether a defendant is
affirmatively linked to contraband, the number of factors present in any particular case is less
important that the logical force the factors have, alone or in combination, in establishing the
elements of the offense. See Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991,
pet. ref'd).

Winn did not own and was not driving the Suburban. Although he was sitting in
close proximity to the contraband, the drugs were not in plain view but were hidden at the bottom
of the console. Winn had no drugs on his person, there was no evidence that he or his companions
were intoxicated, and he made no statements linking him to the contraband. On the other hand,
Winn's behavior following the stop was suspicious in several respects. He claimed to have no idea
where he and his traveling companions had been. While waiting for the drug dog to arrive, Winn
and the other occupants of the Suburban remained in the vehicle, moving about and smoking with
the windows closed, from which an inference could be drawn that they were attempting to hide
the drugs and disguise their odor. And after the dog arrived, they initially refused to exit the
vehicle. Also suggesting a link between Winn and the contraband was his possession of rolling
papers which he admitted he used to smoke marihuana. The material used to wrap the cocaine,
including sheets of fabric softener, were found in the Suburban. Finally, Winn and Wray testified
that five adults and an infant had gone to Houston to visit an amusement park and the beach, but
the police found no luggage in the Suburban.

Viewing the evidence in the light most favorable to the verdict, we conclude that
Winn's connection to the cocaine was shown to be more than merely fortuitous. That is, a rational
trier of fact could find beyond a reasonable doubt that Winn exercised care, custody, or control
over the cocaine knowing that it was contraband. Point of error one is overruled.

In a factual sufficiency review, the evidence is not viewed in the light most
favorable to the verdict. Instead, all the evidence is considered equally, including the testimony
of defense witnesses and the existence of alternative hypotheses.